*491 ZAHRA, J.
(concurring). The majority opinion concludes correctly that this case presents a justiciable issue, and I agree that our endeavoring to interpret the bounds of the commutation power does not offend the separation-of-powers doctrine. I also agree with the majority that Governor Granholm irrevocably commuted the plaintiffs sentence before trying to undo her decision. I write separately, however, because I disagree with the majority regarding the moment at which a commutation becomes final. While the majority concludes that a commutation may be revoked until it is affixed with the Great Seal of the State of Michigan, I conclude that a commutation becomes final when the governor signs it.
Every law student in the country reads the seminal United States Supreme Court case of Marbury v Madison,[1] As the majority opinion ably explains, Marbury concerned the validity of nine commissions issued to justices of the peace by President John Adams as he was leaving office that were not delivered to their intended recipients. While professors typically use Marbury to expound on the judiciary’s role in government, this case presents the rare situation in . which Marbury is relevant for its holding regarding the finality of an executive act. According to Chief Justice John Marshall in Marbury, a “power has been exercised, when the last act, required from the person possessing the power, has been performed[.]”[2] It cannot be gainsaid that the Governor alone possesses the commutation power,[3] and, as in Marbury, “[t]his last act is the signature. .. .”[4] *492 Thus, Governor Granholm had exercised the commutation power as soon as she placed her signature on plaintiffs commutation.
The majority holds that a commutation becomes irrevocable once the secretary of state affixes the Great Seal. It reaches this conclusion because it attaches particular weight to the Legislature’s command in MCL 2.44 that the Great Seal be applied to commutations and a number of other documents. But the majority fails to consider the Marbury Court’s discussion of the United States Seal, which had to be applied to the commissions for the justices of the peace. Chief Justice Marshall wrote, “[t]he signature is a warrant for affixing the great seal to the commission; and the great seal is only to be affixed to an instrument which is complete.”[5] In other words, Chief Justice Marshall opined that the United States Seal authenticates a document that has become final upon receiving the president’s signature. I attach the same significance to Michigan’s Great Seal, but no more.
In reaching his conclusion in Marbury, Chief Justice Marshall attached particular significance to the mandate imposed on the secretary of state: “The commission being signed, the subsequent duty of the secretary of state is prescribed by law, and not to be guided by the will of the president.”[6] The United States Secretary of State’s duty was ministerial; he had no discretion to do anything other than seal the commission and deliver it. Likewise, MCL 2.44 orders Michigan’s secretary of state to affix the Great Seal to a commutation;[7] it *493 provides no further discretion to the secretary of state or the governor. This bears emphasis: once a commutation has been signed, MCL 2.44 requires the secretary of state to affix the Great Seal, and the statute does not empower the governor to stop it. Chief Justice Marshall called the act of affixing the seal “a ministerial act, which the law enjoins on a particular officer for a particular purpose.”[8] In Michigan, the law imposes this ministerial duty on the secretary of state, and he or she must complete the task once the governor exercises his or her discretion.[9]
The Marbury Court drew an important distinction between an executive act’s finality and the document’s completion. Chief Justice Marshall said, “It is, therefore, decidedly the opinion of the court, that when a commission has been signed by the president, the appointment is made; and that the commission is complete, when the seal of the United States has been affixed to it by the secretary of state.”[10] Once again, our case is on all fours: the commutation became effective and irrevocable as soon as Governor Granholm’s pen left the page — the commutation was made. The docu *494 ment evidencing the commutation requires the Great Seal for completion, but the executive’s discretion has already been exercised.
The majority’s reliance on MCL 2.44, rather than Marbury’s “last act” analysis, can be traced to differences between the state and federal constitutions. Specifically, the Michigan Constitution makes the governor’s clemency power “subject to procedures and regulations prescribed by law.”[11] The majority suggests that the requirement in MCL 2.44 that the Great Seal be applied to commutations constitutes a procedure or regulation prescribed by law and that a commutation is incomplete and ineffective without the seal. I conclude, however, that MCL 2.44 is not the type of procedure or regulation contemplated by that constitutional provision.
Drawing from the Constitutional Convention debates, the majority opinion explains at length how the “practice and procedure” language came to exist in article 5, § 14 of the Michigan Constitution. The “practice and procedure” language reflects the delegates’ concern that the governor could not deal with an unfiltered influx of clemency applications. As a solution, the delegates proposed ways that the Legislature could regulate the application process. In fact, an earlier draft of the language stated that the pardon power was “subject to regulations provided by law relative to the manner of applying for pardon.”[12] Thus, the “practice and procedure” language refers to the Legislature’s control of the application process, not to the Legislature’s ability to create a point of finality different from the “last act” analysis that had stood for 160 years.
*495 Significantly, the Legislature has taken up the constitutional provision’s invitation by enacting several procedures that a candidate must complete before becoming eligible for any type of clemency. MCL 791.243 and MCL 791.244 require all applications for pardons, reprieves, and commutations to be filed with the parole board and prescribe a lengthy interview and hearing procedure for any applicant. The provisions then instruct the parole board to transmit a recommendation to the governor for a final decision. Thus, the Legislature has provided a practice and procedure through which all clemency applicants must pass, which is consistent with the Constitutional Convention delegates’ concern that clemency applications should not reach the governor unfiltered.
Finally, I am concerned that the majority’s holding leaves our jurisprudence with the very problem that the majority opinion identifies as a flaw in the defendants’ argument. Namely, if a governor commutes a sentence but the seal is not affixed to the commutation before that governor leaves office, then nothing stops the incoming governor from revoking the commutation as soon as he or she takes office. The same would be true for any of the acts requiring the Great Seal under MCL 2.44, including appointments, commissions, and extraditions. On the other hand, remaining faithful to Mar-bury’s principled holding prevents a new governor from reversing or revoking a prior governor’s unsealed executive actions.
In sum, I would adhere to Marbury’s “last act” analysis and conclude that the commutation power has been exercised “when the last act, required from the person possessing the power, has been performed[.]”[13] The last act required from the Governor — the holder of *496 the commutation power — was signing the commutation. At that point, the power was exercised and the plaintiffs sentence was commuted to parolable life.

 Marbury v Madison, 5 US (1 Cranch) 137; 2 L Ed 60 (1803).

 Id. at 157.

 Const 1963, art 5, § 14.

 Marbury, 5 US at 157.

 Id. at 158 (emphasis added).

 Id.

 MCL 2.44(d) (“An impression of the great seal shall be placed on the following documents but no others: .. . Commutations of sentences.”) (emphasis added).

 Marbury, 5 US at 158.

 After concluding that an executive act is final upon the discretion-holder’s exercise of that discretion, Chief Justice Marshall proceeded to discuss the possibility of the seal’s being necessary to complete a document. He said that even if the seal was a necessity, the commissions were still final under the facts before him: “If it should he supposed, that the solemnity of affixing the seal is necessary, not only to the validity of the commission, but even to the completion of an appointment, still, when the seal is affixed the appointment is made, and the commission is valid. No other solemnity is required by law; no other act is to he performed on the part of government.” Marbury, 5 US at 158-159. We are presented with the same situation. The outcome of this case does not turn on whether a commutation is final upon receiving the governor’s signature or when the Great Seal is affixed because both were accomplished before Governor Granholm attempted to revoke the commutation.

 Marbury, 5 US at 162.

 Const 1963, art 5, § 14.

 1 Official Record, Constitutional Convention 1961, p 588.

 Marbury, 5 US at 157.